By the Court, Daniels, J.
The evidence which the court allowed to be given showing the condition of the premises in question, after the finding of the indictment and down to the time of the tial, should not have been admitted. It was entirely foreign to the issue the jury were to try, and would necessarily lead to a reversal of the judgment if it were not entirely certain that the *343 plaintiff in error could not have been harmed by it. The court, in its charge, withdrew this evidence from the consideration of the jury, so far as it might have any tendency to establish the commission of the offense, leaving them at liberty to consider it only as bearing upon the intention of the accused. To this use of it by the jury, the plaintiff in error would have no reason to complain, because it was not necessary that the prosecution should satisfy them that any criminal intent whatever existed. If he had created and maintained a public nuisance, he was guilty of the offense charged, even though he had done so with the best intention. Whether the direction of the court to the jury to disregard the evidence improperly allowed to be laid before them would correct the error of admitting it, presents a more grave and difficult question. It was the opinion of Mr. Justice Paige, in the case of McNight v. Dunlage (1 Seld., 537), that it would; but the question was left undecided by the court. Other authorities might be given tending to countenance a different conclusion, but a reference to them is unnecessary in this case, because the bill of exceptions discloses another ground upon which the exception to that evidence may be satisfactorily answered.
The bill of exceptions contains a statement that the facts were proved, which it was claimed on the trial established the offense charged in the indictment. And if they were proved as so stated, they were not open to controversy or question by either the court or jury. The only question then arising would be as to their legal effect. If they were sufficient to constitute the offense in law, there was but one duty left to the court and jury, which was to convict the accused, and that, too, without reference to the other evidence that might have been given in the case. The facts which are stated as having been proved on the trial, and which, of course, were not open to question, were that the accused slaughtered animals for his meat *344 market on the premises referred to, within the hounds of the village of Albion, distant from fifty-five to one hundred and twenty rods from the dwellings of the persons residing about there, within five rods of a highway on which one hundred teams passed every day, and that the stench extended to such dwellings and was encountered by the persons passing on the highway, and was so offensive sometimes as to require the doors and windows of the dwellings to be closed; and that offal, manure ,and putrid meat accumulated to such an extent during the winter that when it was removed in the spring the stench was much greater, rendering one man sick while at his work at the distance of one hundred rods from the slaughter house. It is not necessary to refer to authorities for the purpose of maintaining the legal conclusion that this was a nuisance within the well-settled rules relating to this class of cases. It clearly rendered the enjoyment of life and property uncomfortable and unwholesome. And such being the state of the case prior to the time of finding the indictment, the proof of the condition of the premises of the accused after that, which certainly was shown to be no worse than before, could not have worked any legal injury to him. And the admission of that evidence, although a legal error, presents no substantial ground for reversing the judgment. (Shorter v. People (2 Comst., 193.)
The supposition that persons who erect and occupy their dwellings where they may be affected by a nuisance already erected and maintained, have no legal right to complain of the annoyance it may occasion them, seems to have been derived from what was incidentally and unnecessarily said by Abbott, Ch. J., in the case of Rex v. Cross (2 Car. and Payne, 226). The case was decided at Nisi Prius, and this point was in no manner involved in it. And what was said upon it is in conflict with Orunden’s case (2 Camp. 89), and Sudley’s case (Sid., 168; Roscoe’s Crim. Evid.. 795); and with the decision of the Court of General Sessions of *345 New York City, in the case of Lynch (6 City Hall Sec., 61). Such a doctrine would render the property of others subordinate to the purposes of him who might, before they had erected their dwellings, have devoted his own to an offensive and unwholesome business. There is no sound principle of law that will protect any man in thus depriving others of the substantial use and enjoyment of their property. A person erecting a nuisance upon his own property, when all other human habitations were so far removed from it as not to be annoyed or disturbed by the nuisance, would not be indictable for the erection merely because others afterwards took up their residence within the reach of its noisome and unwholesome vapors; for while it annoyed no one it could not strictly and legally be affirmed to be a nuisance. But after the adjacent territory should become devoted to domestic or business uses, and the inhabitants should be disturbed, annoyed and rendered uncomfortable by the continuance of the establishment, no good reason would exist for protecting the person then maintaining it from an indictment and conviction for a nuisance on account of such continuance. While an offensive or unwholesome trade or business is carried on at a point so remote from others as in no manner to affect or disturb them, the pursuit is lawful; but it necessarily becomes unlawful whenever the adjacent owners may so far. devote their own property to the purposes of business or residence as to render its continuance incompatible with such purposes. This necessarily results from the legal principle which secures to all the right of devoting their property to the ordinary uses to which property is appropriated. Hence, when one person makes such a use of his property as will preclude others who are near him from deriving any substantial benefit or enjoyment from that which they possess, the law wisely intervbáes and prevents it, for the promotion of the general good. And that intervention is as necessary and *346 justifiable whether the act requiring it consists of an unlawful maintenance and continuance only, as it is where an uhlawful creation or erection of the disturbing cause is added to that. The exception taken to the refusal to charge must therefore be overruled.
But as to that part of the judgment which enjoins the the accused from continuing his business, and directs the abatement of the nuisance, different considerations are presented. It is only where the indictment avers a continuance of the nuisance, and where it shows the business itself to be of that character, that a judgment like that rendered in this case can be proper. (Rex v. Pappineau, 1 Strange, 678; Munson v. The People, 5 Parker, 16.) The indictment in this case does neither. It avers that the plaintiff in error unlawfully and injuriously slaughtered his animals at the slaughter house in question, but not that any annoyance or disturbance of the public was caused by that. It was from the offal and other refuse material which he caused and permitted to be and remain near the dwellings and the highway that the unwholesome and offensive stenches are averred to have arisen, which corrupted and infected the air, and created the nuisance under this allegation of the offense. The court had no power whatever to restrain the plaintiff in error from continuing the business of slaughtering animals at his slaughter house. And the cause which is thus alleged to have constituted the nuisance is averred to have remained a long space of time, to wit: for the space of one month; which by no rule of construction, however liberal, can be held to aver a continuance of the nuisance beyond that. From this manner of charging the offense, it is clear that the record furnishes no ground on which that part of the judgment can be maintained which enjoins the plaintiff in error from continuing the business of slaughtering animals at his slaughter house, and which directs the abatement of the nuisance. The case was one for fine and imprisonment, or either, as *347 the court deemed proper, and for nothing beyond that. So much of the judgment as directs an abatement of the nuisance, and enjoins the plaintiff in error from continuing his business, should be reversed; and, as so modified, the judgment should then be affirmed.