DECISION AND JUDGMENT ENTRY
{¶ 1} Bradley T. Baugnet appeals his conviction for failing to yield the right of way. He argues that the court's guilty verdict is against the manifest weight of the evidence or not supported by sufficient evidence because the oncoming traffic was approximately 1,000 feet away and traveling 60 miles per hour when he turned left; thus, the oncoming traffic did not constitute an "immediate hazard" under the statute.
 {¶ 2} Because the trooper who observed Baugnet turn left in front of traffic testified that the oncoming vehicle had to take evasive action to avoid hitting Baugnet's tractortrailer, the record contains sufficient evidence to support his conviction. Additionally, this evidence constitutes competent and credible evidence to support his conviction, and, therefore, his conviction is not against the manifest weight of the evidence. While Baugnet correctly notes that the evidence shows that the vehicle was some distance away when he began his turn, distance alone does not indicate whether an oncoming vehicle constitutes an "immediate hazard." The trooper, who has over twenty years of experience in law enforcement, stated that Baugnet's action created an immediate hazard to the oncoming vehicle and this statement sufficiently supports Baugnet's conviction. Therefore, we affirm the trial court's judgment.
 {¶ 3} While traveling in his tractor-trailer truck westbound on State Route 35, Baugnet began turning left into a truck stop. At the same time, Ohio State Highway Patrol Trooper Patrick McDonald was traveling eastbound on the same road, at approximately 60 miles per hour. As the trooper approached within 1,000 feet of the intersection where Baugnet starting turning left, the vehicle that had been traveling three to five car lengths in front of the trooper "had to slow down considerably and even started to pull toward the berm" in order to avoid colliding with Baugnet's truck. Trooper McDonald then stopped Baugnet and cited him for failing to yield while turning left, in violation of R.C. 4511.42.
 {¶ 4} At the bench trial, the trooper explained why he stopped Baugnet: "For failure to yield violation. He * * * was stopped between the two lanes of traffic waiting to turn left * * * onto County Road 41 from Route 35. And he proceeded to make his left hand turn in front of oncoming traffic which had to take evasive action to avoid striking his vehicle when he did that."
 {¶ 5} After hearing the evidence, the trial court found Baugnet guilty.
 {¶ 6} Baugnet timely appealed the trial court's judgment and assigns the following error: "The trial court erred in finding the Defendant guilty because oncoming traffic one thousand feet away, traveling toward the operator of a motor vehicle at sixty miles per hour, does not constitute an "immediate hazard" as a matter of law, for purposes of a violation of R.C. 4511.42."
 {¶ 7} In his sole assignment of error, Baugnet asserts that his conviction is against the manifest weight of the evidence and not supported by sufficient evidence because the evidence fails to show that the oncoming traffic constituted an "immediate hazard."
 {¶ 8} When reviewing the sufficiency of the evidence, we examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 9} On the other hand, when considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." Statev. Getsy (1998), 84 Ohio St.3d 180, 193, 702 N.E.2d 866. We sit, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. We must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80, 434 N.E.2d 1356; State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. We may reverse the conviction only if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Conversely, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132, syllabus.
 {¶ 10} R.C. 4511.42 sets forth the essential elements of a failure to yield offense and states that "[t]he operator of a vehicle * * * intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right of way to any vehicle * * * approaching from the opposite direction, whenever the approaching vehicle * * * is within the intersection or so close to the intersection, alley, private road, or driveway as to constitute an immediate hazard." Here, the only element Baugnet disputes is whether the oncoming vehicle constituted an "immediate hazard."
 {¶ 11} In State v. Ludwig (Dec. 4, 1996), Medina App. No. 2531-M, the court held that an oncoming vehicle constituted an immediate hazard under R.C. 4511.43 when the citing officer testified that the defendant turned left approximately 150 feet in front of the officer's vehicle and that he "was forced to brake and slow down `so the situation would not be so close, so dangerous.'" The court stated: "The testimony of the experienced state trooper as to the distance and the danger of the situation provided sufficient evidence to establish that [the defendant's] actions created an immediate hazard."
 {¶ 12} In State v. Cox (Jan. 26, 1994), Greene App. No. 93-CA-63, the court considered whether the defendant's lefthand turn created an immediate hazard to a sheriff's vehicle. The sheriff's deputy testified that while the defendant was turning left, he "was close enough to the intersection that [he] had to hit [his] brakes in order to insure that there was not a crash scene." The trial court found the defendant guilty and the appellate court affirmed, stating that "[t]he trial court here was clearly entitled to accept the testimony of an experienced law officer that he deemed himself at sudden risk of an accident when the [defendant] turned in front of him." The court further rejected the argument that only the distance between the left-turn driver and the oncoming vehicle controls whether the oncoming vehicle constitutes an immediate hazard. Instead, the court stated that the fact finder must be allowed to judge the circumstances of each case to determine whether an oncoming vehicle constituted an immediate hazard.
 {¶ 13} Both Ludwig and Cox relied upon Akron v. Charley
(1982), 2 Ohio Misc.2d 1, 440 N.E.2d 837, to reach their decisions.Charley held that "[t]here is no precise or absolute measurement to determine whether an approaching vehicle constitutes an immediate hazard. Each case must be judge on its circumstances in light of common sense."
 {¶ 14} Here, the evidence shows that the oncoming vehicle that had to take evasive action to avoid colliding with Baugnet's truck constituted an "immediate hazard." The trooper, who has over twenty years of law enforcement experience, including experience enforcing the traffic laws, testified that the oncoming vehicle had to take evasive action as Baugnet turned left. The trooper believed Baugnet's action created an immediate hazard to the oncoming vehicle. His testimony sufficiently supports Baugnet's conviction.
 {¶ 15} Additionally, Baugnet's conviction is not against the manifest weight of the evidence. He seems to complain that because the oncoming vehicle was approximately 1,000 feet away and traveling 60 miles per hour, he had plenty of time to turn left. However, Baugnet forgets that he was driving a large and loaded tractor trailer, which obviously takes longer to maneuver than a four-wheel passenger vehicle. There is nothing in the record to indicate how long it took Baugnet to clear the lane of traffic. Nor is there a scientific calculation that establishes how far the oncoming vehicle would have traveled during that time interval. In the absence of that evidence, the trial court justifiably relied upon the rationale noted in Charley, that "[t]here is no precise or absolute measurement to determine whether an approaching vehicle constitutes an immediate hazard. Each case must be judge on its circumstances in light of common sense."
 {¶ 16} Accordingly, we overrule Baugnet's assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.